1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **EASTERN DISTRICT OF CALIFORNIA**
10

11   DAVID DINO PEREZ,                    )   Case No.: 1:12-cv-2082 BAM
                                          )
12              Plaintiff,                )   **ORDER ON PLAINTIFF'S**
                                          )   **SOCIAL SECURITY COMPLAINT**
13        v.                              )
                                          )
14   CAROLYN W. COLVIN, Acting            )
     Commissioner of Social Security,     )
15                                        )
                Defendant.                )
16   _____ )

17

18                        **INTRODUCTION**

19        Plaintiff David Perez ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying his application for supplemental security

21   income ("SSI") pursuant to Title XVI of the Social Security Act.[1]  The matter is currently before the

22   Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge

23   Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be

24   supported by substantial evidence in the record as a whole and based upon proper legal standards.

25   Accordingly, this Court affirms the agency's determination to deny benefits.

26

27   _____
     [1]        Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
28   25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the
     defendant in this suit.

                                             1

1

**BACKGROUND**

2

On November 13, 2006, Plaintiff filed a prior application for supplemental security income and

3

disability insurance benefits. AR 10.[2]   Plaintiff's applications were denied initially and on

4

reconsideration.  AR 86, 94.  Subsequently, Plaintiff requested a hearing before an Administrative

5

Law Judge ("ALJ").  ALJ Daniel Heely held a hearing on December 9, 2008 and issued an order

6

denying benefits on January 6, 2009. AR 55.

7

On March 17, 2009, Plaintiff again applied for supplemental security income, alleging

8

disability beginning January 6, 2009.  AR 148.  The Commissioner initially denied the claims on

9

October 26, 2009, and upon reconsideration, on March 16, 2010.  AR 86, 94.   Plaintiff filed a timely

10

request for a hearing. On February 22, 2011, Plaintiff, represented by Gina Fazio, testified at the

11

hearing.  AR 28.  On April 4, 2011, ALJ Heely again denied Plaintiff's application.  AR 7.  On

12

October 25, 2012, the Appeals Council denied review.  AR 1.  This appeal followed.

13

**Hearing Testimony**

14

The ALJ held a hearing on February 22, 2011, in Stockton, California.  AR 28.  Plaintiff

15

appeared and testified.  AR 28.  He was represented by attorney Gina Fazio.  AR 28.  Impartial

16

Vocational Expert ("VE") George Meyers also testified.  AR 29.

17

Plaintiff was born on March 2, 1963 and was 47 years old at the time of the hearing. AR 241.

18

He dropped out of high school in the ninth grade and he has no vocational training.  AR 32.  With

19

respect to daily activities, Plaintiff stated that he was homeless and lives in a van when not staying

20

with friends and family.   AR 38.  Plaintiff rides his bike for about one to two hours a day as his

21

primary form of transportation and he spends the majority of his day collecting recyclables or lying in

22

the park.  AR 32, 40.  Plaintiff also travels to a church and the Salvation Army for meals, and he does

23

his laundry at his mother's home.  AR 39, 42.    He last worked plastering stucco in 2004.  AR 33.

24

Plaintiff suffers from back and shoulder pain, but his chief complaints concern his mental

25

impairments. At the hearing, Plaintiff explained that he is unable to work because he regularly hears

26

electrical, wind, motor, and tire sounds in his head.  AR 35, 44.  The sounds are constant and they

27

28

---

[2]         References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

make it difficult for Plaintiff to go to sleep. AR 44. Plaintiff also does not like being around other people. AR 43.  Plaintiff was given a prescription for his auditory hallucinations, but he has since stopped taking them because he believes they did not work.  AR 36.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") George Meyers.  AR 48. The VE testified that Plaintiff previously worked in plaster, which the VE classified as heavy.  AR 47-48.

The ALJ asked the VE several hypothetical questions, contemplating an individual of the same age, education, and work background as Plaintiff.  AR 48.  First, the vocational expert was asked to assume an individual that could sit, stand, and walk for six hours in an eight-hour workday; lift and carry less than ten pounds occasionally; could never climb, balance, stoop, kneel, crouch, crawl, or work around hazards; would require numerous unscheduled rest breaks; and would not have the concentration to perform simple routine tasks.  AR 48. The vocational expert testified that there were no jobs which could be performed with those limitations. AR 48.

In a second hypothetical question, the ALJ asked the VE to consider the same individual except that this person could sit, stand, or walk for 6 hours in an 8-hour workday, and this individual could lift and  carry fifty pounds occasionally and twenty-five pounds frequently; and could perform simple, routine tasks.  AR 48-49.   The VE testified that a person with such limitations could perform other jobs in the national economy such as industrial cleaner, warehouse worker, and hand packer. AR 49.

Finally, Plaintiff's attorney questioned the vocational expert regarding an individual that had moderate impairments in the ability to understand and remember detailed instructions; to maintain attention and concentration; and to interact with co-workers; and had moderate to marked impairments in the ability to accept instructions from supervisors; to complete a normal workday/workweek; and to deal with changes in the work setting. AR 51. The vocational expert opined that an individual with these limitations would be unemployable. AR 51-52.

**Relevant Medical Evidence**

The entire medical record was reviewed by the Court and the relevant medical evidence is summarized as follows.  AR 159-320.  Plaintiff alleged an inability to work beginning January 2009

due to depression, anxiety, and bipolar disorder.  AR 168.  He also alleged an inability to work due to back and shoulder problems.  AR 33-34, 42, 46.  After his second SSI application, Plaintiff began reporting experiencing auditory hallucinations, and claimed that medication did not effectively control his mental symptoms.  AR 35-36, 44.

With regard to his back and shoulder pain, Plaintiff received infrequent care for these physical impairments.  Plaintiff's first date of documented treatment for physical complaints was on November 20, 2007.  AR 316.  Plaintiff complained of right shoulder pain, which his primary care physician, Glenn Villanueva, M.D., suspected was osteoarthritis.  AR 316.   When Plaintiff returned to Dr. Villanueva on March 3, 2008 seeking a release to perform community service in connection with his probation, Dr. Villanueva opined that Plaintiff had "no physical restrictions." AR 236.

In April 2008, Plaintiff reported right arm and back pain but did not seek back or shoulder treatment again until May 2009.  AR 233, 235.  Plaintiff reportedly fell off his bike three months prior, separating his left shoulder's AC joint.  AR 233.  An x-ray of Plaintiff's left shoulder revealed no fracture, mild degenerative changes, and suspect evidence of an old AC separation.  AR 230.

In August and September 2009, Dr. Villanueva noted that Plaintiff reported pain in connection with an "old/chronic" left shoulder separation and prescribed him pain medications (Naprosyn and Ultram).   AR 285-286.   After taking these medications, Plaintiff reported soon after that the medications did not help to reduce his left shoulder pain.  AR 268, 285.  Plaintiff's physician observed there was decreased range of motion and deformity in Plaintiff's shoulder, prescribed him Vicodin, and referred him to an orthopedist. AR 268.  Thereafter, despite meeting with Dr. Villanueva for treatment of mental symptoms, Plaintiff reported no further physical symptoms involving his shoulder. AR 267, 282, 302-305.

With regard to his mental impairments, the record also contained evidence of Plaintiff's treatment for mental symptoms. His first documented treatment for depression and bipolar disorder was on November 20, 2007.  AR 316. Plaintiff reported that he had not seen a therapist since 2003, and he denied suicidal thoughts, difficulty sleeping, racing thoughts, or loss of interest in activities. AR 316.  On March 3, 2008, Dr. Villanueva noted that Plaintiff had not seen a psychiatrist and was not on any psychiatric medications AR 236.  On April 9, 2008, Dr. Villanueva noted that Plaintiff had

4

been prescribed Depakote, but that Plaintiff "needs to start meds." AR 235.  At that time, Plaintiff denied hallucinations and suicidal thoughts.  AR 235.

Thereafter, Plaintiff began taking Depakote, but discontinued use of the medication as of June 24, 2008 because he claimed it made his chest hurt.  AR 231.  Plaintiff continued to deny experiencing hallucinations, and Dr. Villanueva prescribed a trial sample of anti-psychotic medication (Zyprexa) AR 231.

Although Plaintiff told Dr. Villanueva in June 2008 that he had an appointment with a psychiatrist in a few days, Plaintiff did not meet with his psychiatrist, Manuel Chua, M.D., until August 2009. AR 231, 301.   Accordingly, Plaintiff went for six months without any psychiatric medications and reported auditory hallucinations on May 11, 2009.  AR 233.  On August 25, 2009, Plaintiff told Dr. Villanueva that he met with Dr. Chua the day before and received a prescription for Zyprexa.  AR 286.  On September 14, 2009, Plaintiff reported that Zyprexa made him worse and he started taking Abilify.  AR 285.  A week later, Plaintiff reported discontinuing Abilify because it caused decreased energy and his "insides didn't feel right." AR 268.  Plaintiff's physician noted that he had previously given up on Depakote because it caused "weird thoughts." AR 268. The physician recommended re-trials of Zyprexa, Abilify, and Depakote, which Plaintiff declined, and he was referred back to Dr. Chua.  AR 268.

On February 8, 2010, Dr. Chua noted that Plaintiff had "poor compliance" with his medications.  AR 281. On April 19, 2010, Plaintiff reported auditory hallucinations, but Dr. Chua noted that Plaintiff was not currently taking any psychiatric medications. AR 320.  Plaintiff reported taking Abilify in the past, but reported that it caused him to have suicidal thoughts. AR 320.  Dr. Chua gave him samples of Zyprexa, and noted that if the medication was ineffective, he would switch Plaintiff to older forms of psychotropic medications.  AR 320.

On May 20, 2010, Plaintiff reported having auditory hallucinations.  AR 304.   Plaintiff reported that Zyprexa was helpful, but it was "not enough." AR 304.   As a result, Dr. Villanueva increased Plaintiff's dosage of Zyprexa.  AR 304.   On June 14, 2010, Plaintiff again reported experiencing auditory hallucinations to Dr. Chua, but Dr. Chua again noted that Plaintiff had "poor compliance" with medications.  AR 319.  That same day, Dr. Chua completed a medical questionnaire,

indicating that he had treated Plaintiff on four occasions between August 24, 2009 and April 19, 2010. AR 299.  Dr. Chua opined that Zyprexa decreased Plaintiff's irritation and anger outbursts and slowed down his rapid thoughts.  AR 299.  Dr. Chua also opined that Plaintiff had a "poor" ability to function in all mental categories.  AR 300-301.

Plaintiff's last date of documented treatment was on October 25, 2010.  AR 318.  At that time, Plaintiff continued to report hearing voices.  AR 318.  Plaintiff was currently taking Zyprexa, which Dr. Chua decreased due to Plaintiff's concerns that it was causing sexual dysfunction.  AR 318.  Dr. Chua opined that Zyprexa "has done wonders for him," causing Plaintiff to be "more appropriate and coherent."  AR 318.

In addition to Plaintiff's course of treatment, he underwent a psychological evaluation by James Scaramozzino, Ph.D. on July 25, 2009 in connection with his claim for disability benefits.  AR 241-247. Examining psychologist Dr. Scaramozzino, noted that Plaintiff was late to the appointment because he rode his bicycle from a town that was 10 or 15 miles away.  AR 241.  During the evaluation, Plaintiff reported having auditory hallucinations since 1999.  AR 242.  Plaintiff also reported using methamphetamines until one year prior, and stated that he was attending a court-mandated drug program on a weekly basis.  AR 242. The mental status examination revealed Plaintiff to be cooperative, though he had a difficult time elucidating his symptoms.  AR 243.  Plaintiff's stream of mental activity was within normal limits, but he claimed to hear noises persistently, including chanting and screams.  AR 243.  Plaintiff reported that he had a depressed mood and poor appetite.  AR 244. He also had difficulty with focusing and immediate recall.  AR 244.

Dr. Scaramozzino noted that Plaintiff was not currently taking any psychotropic medication for his auditory hallucinations.  AR 247.  He diagnosed ADHD, by history, amphetamine abuse, psychotic disorder, and mood disorder, with a global assessment of functioning ("GAF") score of 55. AR 245. He opined that Plaintiff had a moderate impairment in his ability to perform short simple instructions due to Plaintiff's self-reported history of ADHD throughout childhood and adolescence.  AR 246.  Dr. Scaramozzino also identified moderate to marked limitations in other categories of mental functioning. AR 246-247. Based on Plaintiff's reports of auditory hallucinations, mood changes, and easy irritation Dr. Scaramozzino opined that Plaintiff had several work limitations.  AR 247.

1    The medical record also consisted of a State agency psychiatrist's opinion that Plaintiff could

2    perform simple tasks with limited public contact.  AR 263.

3                                    **THE ALJ'S DECISION**

4    The ALJ found that Plaintiff was not disabled.  AR 23. In reaching this conclusion, consistent

5    with *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) and Acquiescence Ruling 97-4(9), the ALJ

6    considered whether Plaintiff established changed circumstances from the date his prior application for

7    disability was denied, on January 6, 2009. AR 11.  The ALJ found that Plaintiff's allegations of

8    auditory hallucinations constituted changed circumstances warranting reevaluation of his impairments

9    under the five-step sequential evaluation set out in 20 C.F.R. § 416.920(a)(4).

10   Using the Social Security Administration's five-step sequential evaluation process, first, the

11   ALJ found that Plaintiff had not engaged in substantial gainful activity since the January 6, 2009

12   unfavorable decision AR 11-12.  Second, the ALJ found that Plaintiff had severe impairments of

13   depression, bipolar disorder, organic mental disorder, and status post left shoulder separation.  AR 12.

14   Third, the ALJ found that these impairments did not meet or medically equal a listed impairment

15   under 20 C.F.R. pt. 404, subpt. P, app. 1. AR 12-13. The ALJ concluded that Plaintiff maintained the

16   ability to perform medium work, as defined by 20 C.F.R. § 416.967(c), except he was further limited

17   to simple, routine tasks, with occasional public contact, and no work involving hazards or unprotected

18   heights.  AR 13.  The ALJ determined that, despite these restrictions, Plaintiff could perform work as

19   an industrial cleaner (Dictionary of Occupational Titles (DOT) No. 381.687-018), warehouse worker

20   (DOT No. 922.687-058), and hand packer (DOT No. 920.587-018).  AR 22.

21                                    **SCOPE OF REVIEW**

22   Congress has provided a limited scope of judicial review of the Commissioner's decision to

23   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

24   Court must determine whether the decision of the Commissioner is supported by substantial evidence.

25   42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

26   402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

27   1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

28   adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The record as a

7

whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff challenges the ALJ's disability finding in two respects. First, Plaintiff argues that the ALJ erred in weighing his mental impairment medical evidence. Second, Plaintiff argues that the ALJ erred in rejecting his credibility. (Doc. 13 at 13).

## DISCUSSION[3]

A.    **The ALJ Properly Considered the Opinions of Drs. Scaramozzino and Chua**

In Plaintiff's first two arguments, he argues that the ALJ erred by relying on Plaintiff's credibility to reject the limitations assessed by Drs. Scaramozzino and Chua. (Doc. 13). The Court addresses these two issues together, as they are interrelated.

---

[3]    The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

1

### 1.     Dr. Scaramozzino

On July 25, 2009, Dr. Scaramozzino, an examining clinical psychologist, performed a comprehensive psychological evaluation of Plaintiff.  AR 241-247.  Dr. Scaramozzino noted that Plaintiff was seeking SSI benefits because "I have no source of income."  Plaintiff endorsed depressed mood, mood swings, and having difficulty focusing and concentrating as a result of a history of learning difficulties and was easily upset.  AR 244.  Plaintiff stated he had been on Ritalin since the 3rd grade.   He never got along with other children and he primarily ended up fighting.  AR 241.

Plaintiff further reported that his auditory hallucinations began in 1999 when he began hearing screaming, air whishing by and chanting.  Dr. Scaramozzino noted that Plaintiff "has never really been able to clarify or get any kind of relief from that condition which persists intermittently throughout his day and week."  At the time of the evaluation he was not taking any medication nor receiving any psychiatric treatment.  Dr. Scaramozzino noted that Plaintiff stopped using methamphetamine one year earlier and was enrolled in a drug court program.  Plaintiff indicated that he had not worked since January 3, 2003, due to mood swings, depression, and hearing things, but he was unable to explain or further clarify. AR 243.   Plaintiff admitted to a history of drug use and a criminal history resulting in over ten arrests.  AR 243.

Dr. Scaramozzino's mental status examination revealed Plaintiff's stream of mental activity was within normal limits.  His speech form was logical, coherent, and concise with clear articulation.  AR 243.  Dr. Scaramozzino found that Plaintiff's mood was depressed and his affect was sad.  AR 243.   Plaintiff had a poor appetite.  He was oriented to person, place and time.  Plaintiff's intellectual functioning appeared to be within the average or below average range.  He had some difficulties doing immediate recall forward and backward.  AR 244.   Dr. Scaramozzino further found that Plaintiff's fund of knowledge was consistent with his education level and socioeconomic background.  AR 244.  He had significant difficulty completing simple mathematics primarily due to an inability to focus and do arithmetic in his head.  AR 244.   He was able to complete serial threes with some effort.  He had difficulty focusing, but his judgment was considered to be within normal limits.  AR 244.  In terms of activities of daily living, Plaintiff was vague as to how he was able to live.  AR 245.   His living

situation is precarious, as Plaintiff claimed that when he wakes up he eats if he can and takes a shower if possible.  AR 245.  If Plaintiff is in a place where he can help out, he does light chores.  AR 245.

With respect to Dr. Scaramozzino's opinion, ALJ Heely found as follows:

> Once again, I give reduced weight to the opinion of Dr. Scaramozzino, who has now examined the claimant twice.  Both times he relied on the subjective, unreliable statements of the claimant. At the evaluation on July 25, 2009 he reported having auditory hallucinations since 1999.  However, he previously denied having any hallucinations.  The claimant again denied drug and alcohol use.  Per the prior decision, the claimant clearly misrepresented his use to Dr. Scaramozzino, and he did so once again at the second evaluation.  Thus while the claimant denied such use on July 25, 2009, saying he stopped using methamphetamine one year earlier (contradicting his prior statements), on October 25, 2010 Dr. Chua noted that the claimant claimed he was clean and sober for one year, which would mean he was abusing drugs at the time of the second evaluation.  Again, Dr. Scaramozzino's opinion is given reduced weight as it is based on the unreliable subjective statements of the claimant.
> AR 15.

## 2.    Dr. Chua

Dr. Chua completed a mental medical report on June 14, 2010.  He indicated that he had seen claimant on four occasions: August 24, 2009, October 12, 2009, February 8, 2010 and April 19, 2010. His chart notes consisted of "thoughts disorganized—racing thoughts—unable to focus."  AR 299. Plaintiff stated that he "feels like a computer is trying to program (his) brain."  AR 299.  The diagnosis was bipolar I disorder, manic with psychotic features.  AR 299.  Dr. Chua's treatment consisted of Zyprexa which "decreases his irritability and anger outbursts.  Slows down rapid thoughts."  AR 299. Dr. Chua concluded that Plaintiff's prognosis was poor.  AR 299.  He checked boxes indicating Plaintiff's ability to follow work rules, relate to co-workers, deal with public, use judgment, interact with supervisors, deal with work stress, function independently and maintain attention/concentration were all poor, as were his ability to maintain personal appearance, behave in an emotionally stable manner, relate predictability in social situations and demonstrate reliability.  AR 300-301.  Finally, Dr. Chua felt that Plaintiff could not manage his funds.

With respect to Dr. Chua's opinion, ALJ Heely found as follows:

> I give reduced weight to [Dr. Chua's] opinion.  The opinion is based on the subjective report of the claimant who, as discussed herein, I do not find credible.  His statements regarding hallucinations are not credible.  He has misrepresented when he last used drugs.  Subsequent treatment notes from Dr. Chua indicate that medication had 'done wonders' for the claimant.  Chart notes from Dr. Villanueva dated September 23, 2010 indicate that the claimant reported abdominal and back pain.  He was assessed with GERD.

On October 25, 2010, Dr. Chua noted that despite taking Zyprexa, the claimant continued to report hearing voices.  He denied drinking alcohol or using drugs, and claimed he was "clean and sober" for one year.  He reported episodes of uncontrollable anger, mood instability and depression, with decreased sleep.  The claimant felt that his sexual dysfunction could be attributable to Zyprexa.  Dr. Chua decreased the dosage of Zyprexa.  The doctor wrote "Zyprexa has done wonders for him because he is more appropriate and coherent now."

AR 17.

### 3.      Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).  *See also*, 20 C.F.R. § 404.1527(c)(1)-(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight."  20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors

include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii).  Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

### 4.    Analysis

Plaintiff argues that the ALJ erred in rejecting the opinions of Drs. Scaramozzino and Chua by relying solely on the ALJ's assessment of Plaintiff's credibility.  (Doc. 13 at 17).   According to Plaintiff, an ALJ may not simply reject a physician's opinion solely because he finds a claimant not credible.  *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-2000 (9th Cir. 2008).   In *Ryan,* the court held that the ALJ improperly rejected an examining doctor's opinion for being "based too heavily on [the plaintiff's] 'subjective complaints'" and unsupported by the treating doctor's records.   528 F.3d a 1199-2000 (an ALJ "does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those opinions and supports his ultimate opinion with his own observations.").

*Ryan* is inapposite.  There, the Ninth Circuit found that there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's "description of her symptoms…more heavily than his own clinical observations." *Id.* at 1200. That is not the case here. In this case, the evaluation reports by Drs. Scaramozzino and Chua contain little in the way of clinical findings or observations. The evaluation forms Drs. Scaramozzino and Chua completed strongly suggests they did in fact rely heavily on Plaintiff's self-reporting, or at least they did so to a greater

extent than they did on any objective clinical findings, further suggesting  that their mental examinations were based entirely on Plaintiff's self-reports as the ALJ noted.

Further, contrary to Plaintiff's contention that the ALJ relied solely on Plaintiff's subjective symptom testimony, the ALJ stated multiple reasons to give limited weight to the opinions of Drs. Scaramozzino and Chua including Plaintiff's:  (1) conservative course of treatment; (2) inconsistent statements; (3) non-compliance with psychiatric treatment; and (4) the lack of objective evidence supporting Plaintiff's reported symptoms and limitations. AR 11-21.  *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

First, the ALJ found that Plaintiff's course of treatment was not generally the type of medical treatment one would expect for a person suffering severe mental impairments. AR 19.   Supporting this belief, the ALJ noted that Plaintiff's representation of symptoms was exaggerated and unreliable, and, as a result, medical opinions based on those false representations deserved little weight.  AR 15, 17.  On several occasions Plaintiff voluntarily stopped taking his medications and went long time periods without reporting any serious symptoms or seeking treatment or counseling.  AR 19.  For example, Plaintiff's first documented report of auditory hallucinations occurred in May 2009, after going 6 months without any psychiatric medication. AR 233.  The ALJ also noted that on November 20, 2007, Dr. English wrote that Plaintiff had not seen a therapist since 2003.  Five months later, Dr. Villanueva wrote that the claimant was not taking any psychiatric medications and still had not sought mental health treatment.   AR 19.  Furthermore, Dr. Scaramozzino observed that Plaintiff was not currently taking psychiatric medications at the time of his psychological evaluation.   AR 233, 247. Additionally, despite Dr. Villanueva's recommendation that Plaintiff meet with a psychiatrist, and Plaintiff's representation that he would do so, he did not meet with his psychiatrist, Dr. Chua, until more than one year later.  AR 231, 236, 301.

Plaintiff's failure to seek treatment is significant because it undermines the description of his symptoms to Drs. Scaramozzino and Chua.  If Plaintiff were as dysfunctional as he claimed to Drs.

13

Scaramozzino and Chua, the ALJ could reasonably infer that Plaintiff would have been more diligent in seeking and complying with treatment.  An ALJ may rely on "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to assess a claimant's credibility. *Fair*, 885 F.2d at 603.  Here, the ALJ considered Plaintiff's course of treatment and Plaintiff's reasons for rejecting prescribed treatment.  Under the circumstances presented here, the treating records are susceptible to a rational interpretation that Plaintiff's conservative course of treatment indicates that the symptoms relied on by Drs. Scaramozzino and Chua are exaggerated. *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995)(finding it appropriate for the ALJ to discount plaintiff's credibility because of a lack of medical care during a period of claimed disability).

Second, the ALJ rejected the opinions of Drs. Scaramozzino and Chua based on their reliance on Plaintiff's inconsistent statements.  The ALJ established that Plaintiff reported to Dr. Scaramozzino that he had a history of auditory hallucinations since 1999.  AR 15, 242-243.  However, Plaintiff's treatment records demonstrated that Plaintiff denied hallucinations on April 9, 2008.  No mention of hallucinations was made on June 24, 2008 or June 30, 2008.  AR 19.  Further, in Plaintiff's prior disability application there was no indication of hallucinations. The ALJ correctly determined that Plaintiff was misrepresenting his psychiatric history.  Prior to May 2009, Plaintiff consistently denied experiencing auditory hallucinations.  AR 19, 231, 235, 316.  Dr. Scaramozzino relied heavily on Plaintiff's history of hallucinations in assessing his mental functioning, and because Plaintiff exaggerated that history, the ALJ was entitled to give the opinion of Dr. Scaramozzino reduced weight.  AR 15.

Plaintiff also reported inconsistent statements to Dr. Chua. On October 25, 2010, Dr. Chua noted that Plaintiff claimed that he was clean and sober for one year.  However, the ALJ noted that Plaintiff "clearly misrepresented" his drug use.  AR 15.  On July 25, 2009, Plaintiff denied drug use saying that he stopped using methamphetamine in 2008, but a year later—in 2010—he told Dr. Chua that he had only been drug free for a year.  While Plaintiff argues that Drs. Scaramozzino and Chua did not express doubts about Plaintiff's credibility or veracity (Doc. 13 at 15), based on this inconsistent testimony, the ALJ could properly conclude that although the inconsistent information

14

provided by Plaintiff may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information provided to Plaintiff's physicians is not reliable. AR 16.  *See Molina* v. *Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation[] . . . [and] . . . may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct[.]").

Third, the ALJ rejected the opinions of Drs. Scaramozzino and Chua because Plaintiff was "simply not compliant with treatment."  AR 19.  Dr. Chua consistently recorded Plaintiff's poor compliance in taking his prescribed medications.  AR 19, 281, 319-320.  Plaintiff testified that he was non-compliant for several inconsistent reasons including: "it reduced his energy," "gave him weird thoughts," "it made his chest hurt," it made his "leg feel frizzy."  AR 19, 44, 231, 268.  However, Dr. Chua noted that Plaintiff's medications were doing "wonders for him."  AR 20.   Given Plaintiff's non-compliance with his medications even though they were successful, it was reasonable for the ALJ to discount Plaintiff's excuses for his sporadic compliance. AR 19-20. *See Montalvo v. Astrue*, 237 Fed. Appx. 259, 262 (9th Cir. 2007) (finding that plaintiff's failure to comply with certain aspects of her treatment plan was a clear and convincing reason to reject her testimony).

Overall, the ALJ may disregard medical opinions when they are based on discredited subjective complaints. *See Fair*, 885 F.2d at 605. "A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602.  As explained above, the ALJ properly discounted Plaintiff's credibility regarding his symptoms.  The ALJ also properly rejected the findings of Drs. Scaramozzino and Chua to the extent they were primarily based on Plaintiff's subjective complaints. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (affirming ALJ's rejection of treating physician's opinion based on

claimant's self-reports, which ALJ found were not credible).  Accordingly, the Court will not reverse or remand the ALJ's decision for failure to properly weigh the medical opinion testimony.

**B.     The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony**

In addition to the credibility arguments addressed above regarding his mental impairments, Plaintiff argues that the ALJ erred in rejecting his physical impairment testimony. (Doc. 13 at 20). The Court disagrees.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ rejected Plaintiff's physical impairment testimony for three clear and convincing reasons.  First, the ALJ found that Plaintiff's "activities of daily living are inconsistent with disability."  AR 19.  In this, the ALJ was correct. The ALJ noted that Plaintiff is able to ride his bicycle up to 15 miles, live on his own in a van, perform personal care, go to church to obtain food, collect cans, clean his laundry, and go shopping.  AR 19.  An ALJ may consider inconsistencies between a claimant's activities and his subjective complaints. *See Tonapetyan*, 242 F.3d at 1148; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Second, the ALJ noted that the objective medical evidence did not support Plaintiff's claims of ongoing disabling shoulder pain.  The ALJ noted that an x-ray of Plaintiff's left shoulder revealed no significant abnormality of the rotator cuff. AR 19.  Finally, the ALJ discredited Plaintiff's physical impairment testimony because although he

16

alleged severe physical restrictions, Dr. Villanueva indicated on March 3, 2008 that Plaintiff had no physical restrictions.  AR 18.

The ALJ's credibility findings with respect to Plaintiff's subjective symptom testimony were thoroughly explained and supported.  Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair*, 885 F.2d at 604.  By considering Plaintiff's inconsistent statements, his robust physical activities, and the objective medical evidence the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff David Perez.


IT IS SO ORDERED.

Dated:   **March 24, 2014**                    /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE

17